UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSHUA W. HARMON,

                Plaintiff,

v.                                           Case No. 24-cv-1146-pp

KEVIN CARR, *et al.*,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Joshua W. Harmon, who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal and state law. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.  Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On October 1, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $63.17. Dkt. No. 8. The court received that fee on October 10, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint names as defendants Department of Corrections (DOC) Secretary Kevin Carr, C. O'Donnell of the Office of the Secretary, Corrections Complaint Examiner Brad Hompe, Waupun Correctional Institution Warden Randall Hepp, Dr. Panos, registered nurse Robert Weinman, complaint examiner B. Kolb, registered nurse Jessica Hosfelt, Dr. Jerome, Sergeant Barent and correctional officers Tanner Leopold and Bah. Dkt. No. 1 at 1–5. The plaintiff sues each defendant in their individual and official capacities. Id. at 14.

The alleged events occurred while the plaintiff was incarcerated at Waupun. Id. at ¶1. He alleges that during the relevant time, Waupun "was under 'Modified Movement.'" Id. at p.2. He says that on around August 20, 2023, he began experiencing tooth pain and submitted a request for dental treatment. Id. at ¶2. Dr. Jerome responded four days later and told the plaintiff that he was on the list for a tooth extraction. Id. at ¶3. The plaintiff submitted a second request on August 26, 2023, advising dental staff that he was "in a lot of pain and that there is puss [*sic*] coming out of that area of pain." Id. at ¶4. The plaintiff says that he believed that he was suffering from an abscess. Id. The next day, the plaintiff told Leopold, Bah and Barent that he was experiencing "a medical emergency regarding [his] tooth falling out." Id. at ¶5. He does not say how they responded to this emergency, if at all. The day after that, he wrote to Captain Rymarkiewicz (not a defendant) "regarding the inaction of staff in response to the medical emergency." Id. at ¶6. The plaintiff does not say whether he received a response. On August 29, 2023, he wrote a third request for dental services, alleging that "the inaction of the Defendants in the Dental Department" was causing his tooth to fall out. Id. at ¶7. Dr. Jerome responded on September 1, 2023 and reminded the plaintiff that he "was on the list." Id.

Also on August 29, 2023, the plaintiff wrote a request to the Health Services Unit (HSU) about "his tooth coming out and being in pain." Id. at ¶8. The next day, Nurse Hosfelt saw the plaintiff and made a referral for him to dental services. Id. at ¶9. The day after that, Jerome again responded to the

4

plaintiff's requests, "apologized for the delay of care and once again noted that [the plaintiff] was on the list." Id. at ¶10.

On September 7, 2023, the plaintiff told unspecified staff in the HSU that Hosfelt had "falsified her 8/30/2023 report" about his dental condition. Id. at ¶11. He does not say what part of his records was false. On September 11, 2023, he again wrote to dental services because he was "still in pain and experiencing bleeding, which is indicative of an Abscess/Infection." Id. at ¶12. Three days later, Jerome again responded and reminded the plaintiff that he "was on the list." Id. at ¶13. The next day, the plaintiff wrote yet another request to dental services about his pain. Id. at ¶14. On September 19, 2023, Jerome responded and told the plaintiff that he was on "the Essential Wait list." Id. at ¶15 (emphasis omitted). Two days later, the plaintiff filed a request to correct Hosfelt's allegedly false medical record. Id. at ¶16. Hosfelt denied the request on October 2, 2023 "and provided a signature." Id. at ¶17.

The plaintiff alleges that on September 5, 2023, he submitted an institutional complaint about dental services not seeing him promptly and about security staff disregarding his medical emergency. Id. at ¶18. The complaint examiner's officer acknowledged receiving the complaint on September 13, 2023. Id. at ¶19. On September 28, 2023, defendant Kolb recommended dismissing the complaint, even though the plaintiff says he had not yet been seen for dental treatment. Id. at ¶20. On October 11, 2023, defendant Panos, acting as reviewing authority, agreed with that recommendation and dismissed the plaintiff's complaint. Id. at ¶21. The

plaintiff appealed the dismissal of his complaint, but defendant Hompe, as corrections complaint examiner, recommended dismissing the appeal. Id. at ¶¶22–23. Hompe wrote that the plaintiff "delayed his own treatment/care;" the plaintiff disagrees and asserts that "it was clearly the defendants who delayed the care and treatment by keeping [him] on an eternal wait list." Id. at ¶23. A few weeks later, defendant O'Donnell accepted Hompe's recommendation and dismissed the plaintiff's appeal. Id. at ¶24.

On September 12, 2023, the plaintiff filed a second institutional complaint about Hosfelt allegedly falsifying his medical records. Id. at ¶25. Kolb also reviewed this complaint and recommended dismissing it. Id. at ¶27. Defendant Weinman, acting as the reviewing authority, accepted that recommendation and dismissed the complaint. Id. at ¶28. The plaintiff appealed this dismissal, but Hompe again recommended dismissing the appeal. Id. at ¶¶29–31. O'Donnell again accepted that recommendation and dismissed the plaintiff's appeal. Id. at ¶32.

On October 24, 2023, the plaintiff filed a third institutional complaint about his denied dental care. Id. at ¶33. This time, Kolb rejected the plaintiff's complaint, but the plaintiff does not say why Kolb rejected it. Id. at ¶35. The plaintiff filed a request for review of his rejected complaint, but Panos reviewed the request and agreed with Kolb's rejection of the complaint. Id. at ¶37.

The plaintiff claims that the defendants violated his rights under the Eighth Amendment and state law by failing to provide him prompt dental treatment for his abscess and the resulting pain. Id. at ¶38. He claims that

6
Case 2:24-cv-01146-PP   Filed 12/30/24   Page 6 of 17   Document 9

Secretary Carr should be held responsible because he "was aware of the deliberated [*sic*] indifference taking place at WCI and failed to intervene." Id. at ¶39. He claims that O'Donnell is responsible in her role within the Office of the Secretary because she "had the authority to affirm the appeal and force the Defendants to provide the required dental care." Id. at ¶40. He similarly claims that Hompe violated his rights by recommending the dismissal of his appeals from the dismissal of his institutional complaints. Id. at ¶41. The plaintiff claims that Warden Hepp "was placed on notice regarding [the plaintiff's] medical needs, and failed to intervene." Id. at ¶42. He claims that Panos and Weinman violated his rights by accepting the recommendations to dismiss his institutional complaints. Id. at ¶¶43–44. He alleges that Kolb violated his rights by not investigating and recommending dismissal of his complaints. Id. at ¶45.

The plaintiff says that assistant health services manager Haseleu, who is not named as a defendant, "was aware of the denial of [his] medical care and failed to intervene." Id. at ¶46. The plaintiff claims that correctional officers Leopold, Bah and Barent responded to his "medical emergency" on August 27, 2023, but "failed to act and intervene." Id. at ¶47. The plaintiff claims that Jerome was a dentist and ignored his need for medical attention despite being aware through the plaintiff's dental and medical requests of his urgent need for treatment. Id. at ¶48. He says that Jerome "was responsible for [the plaintiff's] unnecessary pain and suffering." Id. Finally, the plaintiff claims that Hosfelt fabricated his medical record and failed to treat his medical needs properly. Id. at ¶49.

The plaintiff alleges that because of the defendants' actions or inaction, he eventually lost his front tooth. Id. at p. 2. He seeks $150,000 in punitive damages against each defendant for causing "permanent damage for the remainder of [his] life." Id. at p. 14.

C. Analysis

The plaintiff's primary claim is that Dr. Jerome and Nurse Hosfelt did not provide prompt medical attention for his painful tooth and alleged abscess. The court reviews these allegations under the Eighth Amendment, which prohibits cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an incarcerated person's health or safety and disregards that risk. Id. at 837; Perez, 792 F.3d at 776.

"A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Arnett v. Webster, 658 F.3d 742, 753

(7th Cir. 2011) (citing McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" Id. (quoting McGowan, 612 F.3d at 640).

The plaintiff alleges that Jerome did not provide him prompt medical attention for his dental pain and abscess despite responding to his numerous requests for dental treatment. He alleges that Hosfelt referred the plaintiff for a dental appointment, but he still was not seen. He also alleges that Hosfelt falsified his medical records in some way and denied his request to correct them. The plaintiff does not say whether Jerome or another dentist ever saw him at Waupun to provide the needed dental treatment. Nor does he say whether he was diagnosed with an abscess or explain whether he lost his tooth because it fell out or because he had it extracted. Although the plaintiff's allegations are vague and incomplete, the court finds them sufficient to satisfy both components of an Eighth Amendment claim. See Dobbey v. Mitchell-Lawshea, 806 F.3d 938, 940 (7th Cir. 2015) (holding that a dental abscess is a serious medical condition that requires "prompt medical treatment"); Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) (noting that tooth decay and pain "can constitute an objectively serious medical condition because of pain and the risk of infection").

The plaintiff also seeks to proceed on a claim of medical malpractice under state law. Federal courts may exercise supplemental jurisdiction over a state law claim that is "so related to claims in the action within [the court's] original

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). Medical malpractice does not violate the Constitution. See Estelle, 429 U.S. at 106 (1976); Brown v. Peters, 940 F.3d 932, 937 (7th Cir. 2019). But the plaintiff may raise this claim under state law. Because the facts underlying the plaintiff's claim of medical malpractice are the same as those underlying his Eighth Amendment claim, the court will exercise supplemental jurisdiction over this state law claim. He may proceed on this claim against Jerome and Hosfelt.

The plaintiff alleges that correctional officers Leopold, Bah and Barent were deliberately indifferent to his medical emergency on August 27, 2023. The court also analyzes these allegations under the Eighth Amendment. See Estelle, 429 U.S. at 104. To satisfy the objective component for this claim, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials were aware of that risk but disregarded it. Farmer, 511 U.S. at 834; Perez, 792 F.3d at 776.

The plaintiff alleges that on August 27, 2023, he told Leopold, Bah and Barent that he was suffering a medical emergency because his tooth was falling out. He claims that they "responded to [his] medical emergency" yet "failed to act and intervene." Dkt. No. 1 at ¶47. He does not elaborate on this claim, does not explain what those defendants did or failed to do that contributed to his medical emergency and does not say what more they could or should have done. Nor does the plaintiff allege whether his tooth did, in fact, fall out on August 27, 2023, though he says he did eventually lose it. He does not say

10

Case 2:24-cv-01146-PP   Filed 12/30/24   Page 10 of 17   Document 9

whether he suffered any harm at all from these defendants' simultaneous responses and failures to act. Although the pleading standard is a low bar, the plaintiff must provide factual allegations supporting his legal claim that the defendants "failed to act" and therefore violated his rights. See Iqbal, 556 U.S. at 678–79 (citing Twombly, 550 U.S. at 555–56). The plaintiff's allegations against Leopold, Bah and Barent do not clear this low bar and do not state an Eighth Amendment claim of deliberate indifference. The court will not permit him to proceed on a claim against these defendants.

The plaintiff does not state a claim against any other defendant. The plaintiff names several defendants whose only involvement was responding to his institutional complaints or appeals. But prison officials do not violate an incarcerated person's rights by rejecting "an administrative complaint about a completed act of misconduct." George v. Smith, 507 F.3d 605, 609–10 (7th Cir. 2007); see Stankowski v. Carr, Case No. 23-2458, 2024 WL 548035, at *2 (7th Cir. Feb. 12, 2024) (citing Owens v. Evans, 878 F.3d 559, 563 (7th Cir. 2017) ("[A]n official who merely reviews a grievance or appeal cannot be liable for the conduct forming the basis of the grievance."). The plaintiff alleges that Kolb, Panos, Hompe, O'Donnell and Weinman either recommended dismissal or rejection of his intuitional complaints or appeals or affirmed the dismissal or rejection of the complaints or appeals. He does not allege that any of these defendants had any personal involvement in his delayed or denied dental treatment. These officials cannot be held liable for doing their job and reviewing and denying his institutional complaints or appeals, even if the plaintiff

11

Case 2:24-cv-01146-PP    Filed 12/30/24    Page 11 of 17    Document 9

believes they were wrongly denied or dismissed. See Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009) (rejecting claim against complaint examiner who "carried out her job exactly as she was supposed to" when she denied incarcerated person's institutional complaint).

The plaintiff insists that these officials should have investigated his complaints and affirmed his allegations or appeals. But the plaintiff does not have a "federal constitutional right to 'meaningful review of prisoner complaints,' including any investigation into the allegations in a grievance." Williams v. Tannan, Case No. 20-cv-1659-pp, 2024 WL 1071857, at *17 (E.D. Wis. Mar. 12, 2024) (quoting Steinke v. Dittmann, Case No. 17-cv-656, 2020 WL 470145, at *3 (E.D. Wis. Jan. 29, 2020), and citing Reimann v. Frank, 397 F. Supp. 2d 1059, 1081 (W.D. Wis. 2005)). That means that the plaintiff has not stated a claim regarding the denial of his institutional complaints or the defendants' refusal to investigate the allegations in his grievances.

The plaintiff seeks to hold Secretary Carr and Warden Hepp responsible because they are upper-level administrators of Waupun who, he alleges, failed to intervene in his denied medical treatment. But chief administrators, like these defendants, "are ordinarily not personally liable for decisions made by subordinates." Courtney v. Devore, 595 F. App'x 618, 620 (7th Cir. 2014) (citing Burks, 555 F.3d at 595–96). Upper-level administrators are responsible only for their own actions. See Iqbal, 556 U.S. at 676; Stankowski, 2024 WL 548035, at *2 (citing Horshaw v. Casper, 910 F.3d 1027, 1029–30 (7th Cir. 2018)). The complaint contains no allegations against Carr or Hepp. The

plaintiff does not allege that Carr or Hepp were aware of or personally responsible for his denied medical treatment. He instead asserts in the "claims for relief" section of the complaint that Carr was aware only generally of deliberate indifference at Waupun. He similarly asserts, without factual support, that Hepp "was placed on notice" of his medical needs. He does not explain how or when Hepp was "placed on notice" of his needs, focusing instead on the fact that Hepp has since been "criminally charged for his acts as the Warden of" Waupun. Dkt. No. 1 at ¶42. That Hepp generally may have engaged in misconduct at Waupun does mean he is responsible for the plaintiff's denied treatment specifically. The plaintiff provides no factual allegations tying Carr or Hepp to his legal claims. His vague, unsupported assertions are insufficient to state a claim against them.

The plaintiff's allegations against Haseleu fare worse. Neither the caption nor the body of the complaint name Haseleu as a defendant, and the complaint contains no allegations whatsoever against her. Like his claim against Carr and Hepp, the only mention of Haseleu is in the plaintiff's claims for relief, where he first identifies her and says she violated his rights by failing to intervene and provide him prompt medical care. This lone statement, without any factual allegations describing how Haseleu was personally involved in the alleged deprivation of the plaintiff's rights, is insufficient to state a claim against her. See Stankowski, 2024 WL 548035, at *2 (citing Taylor v. Ways, 999 F.3d 478, 493 (7th Cir. 2021)) ("To be liable under § 1983, a defendant must be personally responsible for the violation of a constitutional right.").

The plaintiff also seeks to proceed against the defendants in their official capacities. Claims against an official in his official capacity represent another way to plead an action against the entity that the official represents or for which the official works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The court construes the official capacity claims against the defendants as having been brought against the DOC, the agency for which they work. Id. at 165–66. And because claims against the DOC are "no different from a suit against the State itself," the court construes these claims as if the plaintiff had brought them against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55). But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. That means that the plaintiff cannot recover monetary damages against the defendants in their official, versus their individual, capacities in this suit under §1983. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002) (citing Will, 491 U.S. at 66); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003). Because damages are not available against the defendants in their official capacities and are the only relief the plaintiff seeks, the court will dismiss the plaintiff's official capacity claims.

To summarize: the court will allow the plaintiff to proceed against Dr. Jerome and Nurse Hosfelt, in their individual capacities only, on a claim under the Eighth Amendment. The court will exercise its supplemental

jurisdiction over the plaintiff's claim of medical malpractice under state law against Jerome and Hosfelt. The court will dismiss all other defendants because the plaintiff does not state a claim against any of them.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Kevin Carr, C. O'Donnell, Brad Hompe, Randall Hepp, Dr. Panos, Robert Weinman, B. Kolb, Sergeant Barent and correctional officers Tanner Leopold and Bah.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Jessica Hosfelt and Dr. Jerome at Waupun. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within sixty days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$286.83** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the

transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Oshkosh Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 30th day of December, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**