UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA W. HARMON,

                    Plaintiff,

          v.                                         Case No. 24-cv-1146-pp

KEVIN CARR, *et al.*,

                    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 11) AND SCREENING AMENDED COMPLAINT (DKT. NO. 11-1) UNDER 28 U.S.C. §1915A**

          On December 30, 2024, the court screened plaintiff Joshua W. Harmon's *pro se* complaint under 42 U.S.C. §1983 and allowed him to proceed on claims under federal and state law against officials at Waupun Correctional Institution. Dkt. No. 9. On January 30, 2025, the court received the plaintiff's motion to amend his complaint, along with a proposed amended complaint. Dkt. No. 11.

          Under Federal Rule of Civil Procedure 15, "[a] party may amend [his] pleading once as a matter of course" within twenty-one days of service or within twenty-one days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). The plaintiff's motion falls within that timeframe because the defendants have not yet filed a responsive pleading to his original complaint. The court will grant the plaintiff's motion and will screen the amended complaint.

## I. Screening the Amended Complaint (Dkt. No. 11-1)

### A. Federal Screening Standard

As the court explained in its December 30, 2024 order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

2

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The amended complaint names many of the same defendants named in the original complaint. Dkt. No. 11-1. The defendants include former Waupun Warden Randall Hepp, Sergeant Tanner Leopold, Sergeant Barent, Correctional Officer Bah, Dr. Jerome, Health Services Unit (HSU) Manager Ashely Haseleu and registered nurse Jessica Hosfelt. Id. at ¶¶6–12. The plaintiff sues each defendant in her or his individual and official capacities. Id. at ¶78.

The plaintiff realleges that during the relevant time, Waupun was under lockdown and all incarcerated persons were placed on "modified movement." Id. at ¶¶5, 13. He says that incarcerated persons at Waupun had limited access to the HSU during the lockdown. Id. at ¶14. The plaintiff alleges that on August 9, 2023, he requested dental treatment for a toothache to determine whether his tooth needed to be extracted. Id. at ¶18. He says that Nurse Hosfelt accessed his request, triaged his information and referred the request

to dental staff on August 11, 2023. <u>Id.</u> Dr. Jerome responded to the request four days later and told the plaintiff that the plaintiff would need an evaluation to determine if he required an extraction. <u>Id.</u> at ¶19. On August 20, 2023, the plaintiff submitted another request to have his tooth extracted, and Jerome again responded that the plaintiff was on the list for an extraction. <u>Id.</u> at ¶20. The plaintiff submitted a third request on August 26, 2023, advising dental staff that he was "in a lot of pain and there is puss [*sic*] coming out of that area of his mouth." <u>Id.</u> at ¶21. The plaintiff says he believed he was suffering from an abscess. <u>Id.</u>

The next day, the plaintiff told CO Bah that he was experiencing "a medical emergency since his front tooth had fallen out, and [he] was experiencing serious pain" and bleeding from his mouth. <u>Id.</u> at ¶23. He says that Bah "confirmed there was a medical emergency" and wrote down the plaintiff's cell number to pass on to Sergeant Leopold on second shift. <u>Id.</u> at ¶24. The plaintiff says that he waited "awhile" but received "no response by medical," so he "continuously called for medical emergency for a duration of time to get staff[']s attention." <u>Id.</u> He says that he spoke with Sergeant Barent about two hours later, and Barent told the plaintiff to put in a medical request slip through the bars of his cell "and someone would be by to pick it up." <u>Id.</u> The plaintiff says that video footage "will show staff was notified of the medical emergency" but that Bah, Leopold and Barent failed to inform an on-call nurse about it. <u>Id.</u> at ¶26.

On August 29, 2023, the plaintiff again requested dental services, alleging that "the inaction of the Defendants in the Dental Department" caused his tooth to fall out. Id. at ¶29. He also asked for medication for pain he was experiencing and noted that he was still bleeding and in pain. Id. Jerome responded on September 1, 2023 and reminded the plaintiff that he "was on the list." Id. The plaintiff says that he also wrote a request to the HSU about "his tooth coming out and being in pain." Id. at ¶30.

The next day—August 30, 2023—Hosfelt saw the plaintiff, assessed his "medical condition and determined his medical needs." Id. at ¶31. The plaintiff says that Hosfelt wrote out her assessment, triaged his condition and referred the plaintiff "to be seen by dental." Id. at ¶32. On August 31, 2023, Jerome again responded to the plaintiff's requests, "apologized for the delay of care, and once again noted that [the plaintiff] was on the list." Id. at ¶33. On September 4, 2023, the plaintiff wrote to the HSU asking to see HSU Manager Haseleu about his tooth and his ongoing pain. Id. at ¶34. He wrote again the next day and asked to amend his request to Haseleu to suggest that Hosfelt's notes from August 30 were incorrect, and that she should have noted that he was bleeding after biting an apple. Id. at ¶36.

On September 7, 2023, Hosfelt and Jerome responded to the plaintiff's requests. Id. at ¶35. The plaintiff says that Hosfelt again referred his request to the dental unit, and that Jerome once again told the plaintiff that the plaintiff was "on the list for education [*sic*]." Id. The plaintiff says that a nurse (not a defendant) responded to his September 5 request, told him that Hosfelt could

not "chart something she did not see" and advised him to contact the HSU if he wanted to be reassessed. Id. at ¶37. The plaintiff then wrote to the HSU, stating that Hosfelt had falsified her report from August 30 about his dental condition. Id. at ¶38.

On September 11, 2023, the plaintiff again wrote to dental services because he was "still in pain and experiencing bleeding, which is indicative of an abscess/infection." Id. at ¶39. Three days later, Jerome again responded and reminded the plaintiff that he "was on the list." Id. at ¶40. The next day, the plaintiff wrote yet another request to dental services about his pain. Id. at ¶41. On September 19, 2023, Jerome responded and told the plaintiff that he was on "the Essential Waitlist." Id. at ¶42. Two days later, the plaintiff filed a request to correct his allegedly falsified medical records. Id. at ¶43.

The plaintiff alleges that he filed three institutional complaints: one about dental services not seeing him promptly and security staff disregarding his medical emergency, another about Hosfelt falsifying his medical records and a third about his denied dental care. Id. at ¶¶44–66. He says that staff from the complaint examiner's office denied his first two complaints and dismissed his appeals. Id. at ¶¶44–58. Staff rejected his third complaint as untimely and the reviewing authority upheld that rejection. Id. at ¶¶59–66.

The plaintiff reasserts that the defendants violated his rights under the Eighth Amendment and state law by failing to provide prompt dental treatment for his abscess and pain. Id. at ¶72. The plaintiff claims that Warden Hepp is liable because Hepp had a responsibility "to ensure the health and safety for all

staff and inmates." Id. at ¶73. He says that Hepp "was placed on notice regarding [the plaintiff's] medical needs and failed to intervene by providing the proper treatment." Id. The plaintiff asserts that Haseleu was responsible for ensuring that incarcerated persons "are receiving proper and timely care." Id. at ¶74. He says that he "made multiple attempts to notify" Haseleu about his inadequate care, so she "was aware of the denial of [his] medical care and failed to intervene." Id. The plaintiff claims that Leopold, Bah and Barent responded to his "medical emergency" on August 27, 2023, but "failed to act and intervene in providing proper medical care to [his] urgent condition." Id. at ¶75. He reiterates that video footage will show their failure to act appropriately. Id. The plaintiff reiterates that Jerome was aware of his urgent need for treatment but ignored him and "was responsible for [the plaintiff's] unnecessary pain and suffering." Id. at ¶76. Finally, the plaintiff claims that Hosfelt fabricated his medical records and failed to treat his medical needs properly. Id. at ¶77. The plaintiff seeks $400,000 in punitive damages. Id. at ¶78.

  C. <u>Analysis</u>

  The amended complaint, like the original complaint, primarily alleges that Dr. Jerome and Nurse Hosfelt did not provide prompt medical attention for the plaintiff's painful tooth and abscess. For the reasons explained in the December 2024 order, the court finds that these nearly identical allegations state a claim under the Eighth Amendment. Dkt. No. 9 at 8–9 (citing cases). The plaintiff may proceed on this claim, and the court will exercise

7

supplemental jurisdiction over the plaintiff's state law claim of medical malpractice. Id. at 9–10.

The plaintiff next reiterates that Sergeants Leopold and Barent and CO Bah were deliberately indifferent to his medical emergency on August 27, 2023. As the court explained in the December 2024 order, the court analyzes these allegations under the Eighth Amendment. Id. at 10 (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994); Estelle v. Gamble, 429 U.S. 97, 104 (1976)). To state a claim, the plaintiff must show that the officers were aware of but disregarded "a substantial risk of serious harm" to the plaintiff. Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The court did not allow the plaintiff to proceed on this claim in his original complaint because the plaintiff did not "elaborate on this claim, d[id] not explain what those defendants did or failed to do that contributed to his medical emergency and d[id] not say what more they could or should have done. Nor d[id] the plaintiff allege whether his tooth did, in fact, fall out on August 27, 2023." Id. The amended complaint adds some detail to the plaintiff's allegations. The amended complaint alleges that Bah acknowledged the plaintiff's medical emergency and wrote down his cell number to give to Leopold on the next shift. The plaintiff does not say whether Bah took any other action. He does not allege anything against Leopold, so it is not clear whether the plaintiff is alleging that Leopold was aware of the plaintiff's medical issue. The plaintiff says that he did not receive a response and continued to call for emergency help. He eventually spoke with Barent, who told the plaintiff

to put a medical request slip through the bars of his cell for someone else to pick up. The plaintiff newly alleges that his tooth did fall out on August 27 or 29, 2023. He also newly alleges that video evidence will show that he notified "staff" of his medical emergency, but that the officers failed to inform the on-call nurse about his condition.

The court recounted in the December 2024 order that "the pleading standard is a low bar," but found that the plaintiff's allegations against the officers had not met it. Dkt. No. 9 at 10. The court reaches the same conclusion about the amended complaint's scant allegations against Leopold. The only allegation connecting Leopold to the plaintiff's "medical emergency" is the allegation that Bah said he would a leave a note for Leopold with the plaintiff's cell number. The plaintiff does not say whether the plaintiff spoke to Leopold or whether Leopold was ever aware of his medical emergency. He says that video evidence will show that "staff" was notified, but the word "staff" "does not adequately connect specific defendants to illegal acts." Brooks v. Ross, 578 F.3d 574, 580 (7th Cir. 2009). The additional allegations in the amended complaint *do* suggest that Bah and Barent were aware of the plaintiff's "medical emergency" and did not respond adequately or appropriately by contacting the HSU. Although the allegations are weak, they are enough to suggest that Bah and Barent were aware of but indifferent to the plaintiff's medical concern. The court will allow the plaintiff to proceed an Eighth Amendment claim against Bah and Barent but not against Leopold.

The amended complaint, like the original complaint, does not state a claim against any other defendant. The plaintiff restates his allegations about his institutional complaints, but he does not name as defendants the officials who denied his complaints and appeals. Even if he had, he would not state a claim against these officials for the same reasons the court explained in the December 2024 order. Id. at 11–12 (citing George v. Smith, 507 F.3d 605, 609–10 (7th Cir. 2007); Stankowski v. Carr, No. 23-2458, 2024 WL 548035, at *2 (7th Cir. Feb. 12, 2024); and Williams v. Tannan, No. 20-cv-1659-pp, 2024 WL 1071857, at *17 (E.D. Wis. Mar. 12, 2024)). The plaintiff again seeks to hold Warden Hepp liable because he was the warden at Waupun at the time of the alleged events. But the amended complaint, like the original, contains no allegations against Hepp. The plaintiff cannot proceed against Hepp based only on "vague, unsupported assertions" about his liability. Id. at 12–13 (citing Iqbal, 556 U.S. at 676; Courtney v. Devore, 595 F. App'x 618, 620 (7th Cir. 2014)). The plaintiff cannot proceed against HSU Manager Haseleu because, even though the amended complaint names her as a defendant, it still fails to "describ[e] how Haseleu was personally involved in the alleged deprivation of the plaintiff's rights." Id. at 13 (citing Taylor v. Ways, 999 F.3d 478, 493 (7th Cir. 2021); Stankowski, 2024 WL 548035, at *2). Finally, the plaintiff cannot proceed against the defendants in their official capacities because they are state officials, and he still seeks only damages. Id. at 14 (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Lapides v. Bd. of Regents of the

Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); and Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003)).

To the extent the plaintiff seeks to proceed on allegations that the defendants violated institutional policy, he does not state a claim. Section 1983 protects against only constitutional violations; it does not protect against violations of prison regulations or policies. See Hunter v. Mueske, 73 F.4th 561, 567 & n.1 (7th Cir. 2023); Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017).

The court will allow the plaintiff to proceed against Dr. Jerome and Nurse Hosfelt in their individual capacities on the same claims under the Eighth Amendment and under state law for medical malpractice. The plaintiff also may proceed on an Eighth Amendment claim against Sergeant Barent and CO Bah in their individual capacities. The plaintiff may not proceed on any other claims or against any other defendants.

## II.  Conclusion

The court **GRANTS** the plaintiff's motion to amend his complaint. Dkt. No. 11. The court **DIRECTS** the clerk to separately docket the amended complaint, dkt. no. 11-1, which is now the operative complaint.

The court **ORDERS** that defendants Randall Hepp, Tanner Leopold and Ashely Haseleu are **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for

service on defendants Jessica Hosfelt, Dr. Jerome, Sergeant Barent and Correctional Officer Bah at Waupun. Under the informal service agreement, the court **ORDERS** the defendants to respond to the amended complaint within sixty days.

Dated in Milwaukee, Wisconsin this 21st day of February, 2025.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**